Argued December 3, 1963, affirmed March 18, 1964

## SMITH *v.* BROWN
390 P. 2d 364

*Freeman C. Murray,* Klamath Falls, argued the

cause for appellant. On the brief were Beesley and Murray, Klamath Falls.

*David E. Card,* Klamath Falls, argued the cause for respondent. On the brief were Smith and Card, Klamath Falls.

Before McAllister, Chief Justice, and Rossman, Sloan, Goodwin and Lusk, Justices.

ROSSMAN, J.

This is an appeal by the plaintiff from a judgment of the circuit court which it entered in favor of the defendant after it had sustained the latter's motion for a judgment of involuntary nonsuit. The basis of the allowance of the motion was a lack of evidence, so the trial judge ruled, to sustain the averments of negligence.

The defendant was the operator of a hotel in Klamath Falls. When the plaintiff was in the hotel February 12, 1958, she fell to the floor, due, so she claims, to a defect in a brief stairway which she was about to descend. The trial judge did not deem the brief stairway was in fact a flight of stairs; he referred to it as "a step down from one level of floor to the next level." The plaintiff, immediately prior to her injury, was engaged in playing cards in the hotel's Pine Grove Room and desired to go to the women's lavatory. The floor of the Pine Grove Room was 14 inches higher than the lobby's floor. Evidently the women's lavatory was on the same level as the lobby floor. The brief stairs, or step down, aforementioned, was apparently a means for going to or from the Pine Grove Room. If one does not deem that a stairway consists of any part of the floor upon which

he stands immediately before stepping down, and likewise does not include any part of the lower floor, at the foot of the steps, then defendant's so-called stairway consisted of only one step. The stairway or step down had two risers, each about six inches in height, and only one tread. Anyone going down the stairway stepped from the Pine Grove Room floor onto the single step and then onto the lobby floor.

The outer edge of the floor of the Pine Grove Room was trimmed with a metal strip to which the parties referred as stripping. It was about 1¾ inches broad. When the plaintiff had reached the outer edge of the floor of the Pine Grove Room and was preparing to step down to the lobby floor, her right heel somehow got caught and presently she fell.

Upon the plaintiff's request the trial judge and the jury viewed the premises.

The plaintiff presents two assignments of error. The first contends that the trial judge erred in ruling that the stripping was not shown to have been defective. The second challenges a ruling that the defendant was not negligent in having no railing upon the stairway.

February 12, 1958, the plaintiff was in the Pine Grove Room. She and some others who belonged to a club had eaten lunch there, and at its conclusion had begun to play bridge. The plaintiff was familiar with the Pine Grove Room and with the stairway. She had used both in the past. Shortly after the play of cards was begun, the plaintiff left her card table and started to walk to the ladies' room. In so doing, she went through a door and reached the outer edge of the floor of the Pine Grove Room (trimmed with the stripping) when her right heel got caught somehow and she fell to the floor. The plaintiff was 78 years of age, and her

injuries were serious. The Statement of Facts which constitutes a part of the brief which plaintiff's counsel filed in this court states:

"The exit from the Pine Grove Room into the lobby of the hotel consisted of two doors which opened into a small cloakroom. Immediately outside the doors there was a small landing, which was at the same level as the floor of the Pine Grove Room. Then there were two steps down to descend to the same level as the main floor of the hotel, as admitted by defendant's answer. The distance from the first step to the doors was about a foot, and the steps extended for the full length of the cloakroom.

"There was linoleum covering the landing, and the edge of the top step had a binding or stripping of aluminum-colored metal along the edge."

Although the foregoing quotation from plaintiff's brief refers to "two steps" it counts as one of the two the outer extremity of the floor of the Pine Grove Room which the plaintiff had reached immediately before starting to step down.

The complaint alleges that the "two steps" were "and for a long time prior thereto had been in a defective, unsafe and dangerous condition in that the stripping on the edge of the top step was turned upward so that said stripping was not lying flat on the tread of said step." The complaint further alleges that the "two step" stairway had been "for a long time prior thereto in a defective, unsafe and dangerous condition in that no handrail or guard was provided for the safety of the patrons of said hotel."

When the plaintiff reached the edge of the Pine Grove Room floor her foot was caught. At that moment she was still upon the floor upon which she had

been playing cards. She had not yet stepped down to a lower level. The outer edge of the floor was trimmed, as we have said, with a metal strip 1¾ inches broad. The plaintiff argues that the stripping was defective, that is, that it was upturned and caught her right heel.

Although the plaintiff sought to indicate that the stripping upon the outer edge of the top step was upturned or otherwise defective, neither she nor anyone else so swore. Testimony to that effect is absent. The plaintiff testified:

"Q Did you at any time, Mrs. Smith, see the metal stripping in a defective condition, that is bent up or turned up, did you actually ever see that?

"A I don't believe I did."

The plaintiff conceded that when she noticed that her right heel was caught she looked down directly at the stripping.

The plaintiff's daughter, who attended the luncheon and card party with her mother, testified, as a witness for the plaintiff, that after she took her mother to a hospital she returned to the hotel and examined the stripping. Further, she testified that she examined it on several subsequent occasions, including the day of the trial. She was not asked whether she found any defect in the stripping and gave no testimony upon that score. The daughter's husband testified that within three days of the accident he examined the stairway and stripping. He made some examinations subsequent thereto. Like his wife, he was not asked whether he noticed any defects or irregularities. Further, like his wife, he gave no information upon the subject.

In *Mooney v. Holcomb,* 15 Or 639, Mr. Justice LORD said:

> "It is admitted that the non-production of evidence clearly within the power of a party creates a strong presumption that, if produced, it would be against him. Our Code provides, 'that if the weaker and less satisfactory evidence is offered, when it appears that stronger and more satisfactory was within the power of the party, the evidence offered should be reviewed with distrust.' (Hill's Code, § 845, subd. 7.) * * *."

The defendant was called as an adverse witness by the plaintiff. In response to questions submitted by plaintiff's counsel, he testified that he was familiar with the stripping and stairway. He was not asked whether he had even noticed any defects. According to him, the stripping appeared to be "in fairly good shape" every time that he glanced at it.

We do not know why plaintiff's counsel asked none of the three witnesses just mentioned whether he or she had noticed any defect in the stripping. In brief, none of the witnesses gave any testimony which indicates that the step or stripping was defective. Likewise, none of them indicated that the edge or any part of the stripping was turned up or otherwise maladjusted. The plaintiff and the three witnesses whom we just mentioned were the only persons who testified upon the subject of the step and the stripping. It is evident that no one gave any testimony that would support a finding that any defect existed in the step or stripping.

The plaintiff introduced in evidence the shoes that she wore at the time of her fall. The lower extremity of the heel, which was made of rubber, was about a quarter of an inch thick. The lower extremity of the

right heel is missing. Nine small sharp nails protrude downward about a quarter of an inch from the remaining part of the heel, that is, from the part where the rubber pad had previously been. The plaintiff, in describing her movement immediately preceding her fall, testified: "I just stepped forward and my heel caught and it held me right there." In that position, five inches of the forward part of her foot extended beyond the edge of the floor and three or four inches rested upon it.

■ We assume that the plaintiff regarded the pair of shoes as circumstantial evidence. We also assume that the plaintiff introduced them in evidence to show that the lower extremity of the right heel was actually missing and to enable the jurors to draw inferences from that fact. Although production of the right shoe established that the lower part of the right heel was missing, it does not in itself indicate that the stripping was defective. The record contains no evidence that could warrant a finding that there was any defect in the step or stripping. We are satisfied that the assignment of error which contends that the stripping was defective is without merit.

The remaining assignment of error presents a contention that the defendant was negligent in not having provided a railing for the steps. The plaintiff has not mentioned the character of the railing that she believes the defendant should have provided; nor has she indicated the place where it should have been built. She does not claim that when she began to fall she reached for a railing or other support. We take the following from her brief:

"'Q About how far from the door—you testified that you came out of the Pine Grove Room,

about how far was it from the first step from the door, if you recall?

"'A I think a good foot.

"'Q A good foot?

"'A Uh-huh.'

"So here we have a situation according to the testimony, where one leaving the Pine Grove Room would open the door, be confronted with a landing of 'a good foot' in width, and then the steps. * * *"

Under those circumstances a part of the plaintiff's body was still partially in the doorway when her mishap occurred.

So far as the record indicates, no ordinance of the city of Klamath Falls requires the installation of a railing upon staircases. No statute of the State of Oregon required this staircase to be equipped with a railing.

It will be noticed that the plaintiff's accident did not befall her while she was descending or ascending the steps. Going up or down stairs may affect one's equilibrium. When the plaintiff fell she was still on the same floor level where she was while playing cards. She had not yet touched the step.

The record affords an inadequate description of the place where the plaintiff fell. It brings to us no photographs or other representation of the place where the accident occurred.

It will be recalled that the plaintiff intended to go to the women's lavatory. She testified that as she was coming through the door she entered "just sort of a small room, a cloak room you might call it." The relationship of that room to the women's lavatory, to the Pine Grove Room and to the lobby was not mentioned during the trial, nor does any evidence reveal

whether the "cloak room" was on the route to the women's lavatory. If any patron of the hotel had previously taken the course which the plaintiff pursued, no witness mentioned it. No one testified whether the route which the plaintiff took was available to the guests of the hotel or whether the plaintiff pursued it upon her own responsibibility.

The plaintiff's counsel, referring to the cloak room, asked the plaintiff:

"Q  Tell this jury whether or not there were any steps or stairs in that room?

"A  Two steps as near as I can figure."

We assume that these "two steps" are the ones in question. We have quoted from the plaintiff's brief and from the testimony given by the plaintiff herself to the effect that the distance from the doors to the outer edge of the Pine Grove Room floor is about one foot. We cannot understand where the cloak room was located, nor do we perceive why the plaintiff was about to enter it when her real objective was the women's lavatory.

The plaintiff gave this testimony:

"Q  *  *  *  How wide were those steps from one end to the other?  Could you give the jury an approximation?

"A  Quite long.

"Q  Could you say how many feet?

"A  No, I couldn't.  Do you mean this way or that way?  (witness indicating)

"Q  Well, you have described that the steps went in front of two doors?

"A  Yes.  They were very long because they came from one end of the partition almost to the doorway.

> "Q Could your give us an approximation how many feet that would be?
>
> "A Twelve or fourteen feet or something like that."

It will be observed that the plaintiff testified that the steps reached "almost to the doorway." If they did not come to the doorway, then, seemingly, they were not available to anyone who was about to pursue the course which the plaintiff was taking. No other witness mentioned the location of the steps and the words just quoted constitute the sole testimony upon this subject.

If the steps did not go to the doorway but "almost to the doorway," and no further, we cannot understand how the steps had anything to do with the plaintiff's injury.

The above is virtually the entire description afforded by the evidence of the place where the injury occurred. We have been unable to find in the record anything else that has a bearing on the second assignment of error. The trial judge, upon the plaintiff's request, visited the premises. Although a visit is not made for the purpose of acquiring evidence, nevertheless the visit may have enabled the judge to understand the place where the plaintiff fell. In sustaining the defendant's motion for an involuntary nonsuit, he rendered an oral opinion which is enlightening. He stated:

> "* * * It would appear to the Court that possibly there is a duty to have handrails upon certain types of dangerous steps, but the Court doesn't feel that it applies to this type of step involved in this particular case. It's nothing more than a level step down from one level of floor to the next level. * * * it has not been shown that a handrail un-

der these circumstances could have kept the plaintiff from falling if there was such a handrail. I do not feel that there should be a duty on just a step-down, because these step-downs go over a considerable space. * * *"

■ The plaintiff, in seeking a reversal of the circuit court, assumes the burden of showing that it was erroneous. The trial judge had viewed the premises. In determining whether error exists we cannot resort to guesswork or speculation.

■ We believe that the plantiff's evidence failed in two respects to make out a jury question upon the negligence, if any, of the defendants in failing to provide a handrail. First, there is no evidence from which it could be inferred that the absence of a handrail was causally connected with the plaintiff's mishap. Second, there is no evidence of facts from which a jury could, without engaging in speculation, say that the conditions existing at the scene of the accident imposed any duty upon the defendant to install a handrail.

The second assignment of error is without merit.

The challenged judgment is affirmed.